## UNITED STATES v. ONE 1942 G. M. C. TRACTOR TRUCK.

### No. 9930.

United States Court of Appeals,
Seventh Circuit.

May 24, 1950.

Otto Kerner, Jr., U. S. Attorney, John Peter Lulinski, Wm. Sylvester White, Jr., Asst. U. S. Attorneys, Chicago, Ill., August H. Hoch, Joseph H. Collier, Attorneys, U. S. Treasury Department, all of Chicago, Ill., for appellant.

John D. Vosnos, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, LINDLEY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal by the government from an order entered June 28, 1949, denying forfeiture of a 1942 G.M.C. tractor truck (named as the respondent) for violations of the Internal Revenue laws relating to distilled spirits. The matter was heard by Judge Barnes, who made findings of fact and entered conclusions of law upon which the order appealed from is predicated. The libel contained four counts, but only counts 1 and 4 are relied upon here. Count 1 is based upon Sec. 3321(b) (1) (3), and count 4 upon Secs. 3116 and 2803 of the Internal Revenue Code, Title 26 U.S.C.A. §§ 3321(b) (1, 3), 3116, 2803. William Edward Karuhn (sometimes referred to as the claimant) intervened in the proceeding, filed an answer denying the allegations of the libel, alleged that he was the lawful owner of the truck and prayed for dismissal of the proceeding.

The findings, if valid, undoubtedly support the order, but the government argues that they are not substantially supported by the evidence and that the court in its findings and conclusions misinterpreted and wrongfully applied the provisions of the statute upon which the libel is based. There is no dispute about certain general findings which the court made. They disclose that on November 26, 1948, the claimant met one Frank McGee, whom he had casually known, at the restaurant at 22nd and Western Avenue, Chicago, Illinois, that McGee asked the claimant whether he was free to do him a favor and drive him to 4445 Cottage Grove Avenue, and the claimant said: "I don't mind, I have plenty of time; I'll do that favor for you." McGee requested the claimant to park his truck near 4445 Cottage Grove Avenue because McGee wanted to buy something or see someone; then McGee came out with one or two wrapped packages and placed them on the tractor and asked the claimant whether he would mind driving him to 1933 West Graves Avenue, and the claimant said, "Well, I don't mind doing that; I have plenty of time," and he proceeded to drive him to 1933 West Graves Street. Upon reaching the said destination McGee asked him to stop the tractor and McGee alighted from the tractor and picked up the packages and opened a garage located on said address. When one of the packages was dropped it was for the first time known to the claimant that the wrapped packages consisted of tin cans.

The government relies strongly upon the testimony as to what happened after claimant and McGee arrived at the garage. No findings were made in this respect, on the theory, we assume, that the court regarded such testimony as immaterial. The record discloses, however, that within two or three minutes after claimant and McGee entered the garage, the latter proceeded to unwrap the cans and siphoned some liquor from the drums; that claimant asked McGee what it was all about, to which the latter made no response; that claimant for the first time realized that McGee was violating the law, and started to leave the premises. At that moment investigators for the Alcohol Tax Unit appeared upon the scene with a search warrant, arrested both claimant and McGee and seized the truck which had been parked in an alley near the garage. In the garage the officers found a 55-gallon drum from which a hose was being used to siphon distilled spirits into a 1-gallon jug, four 5-gallon cans filled with distilled spirits, six empty 5-gallon cans, and two empty 55-gallon steel drums. None of the containers bore Internal Revenue stamps indicating the payment of a tax.

Claimant and McGee were charged in a two-count indictment with (1) having in possession 46 gallons of distilled spirits, the immediate containers of which did not have fixed thereto Revenue stamps, and (2) with removing, depositing and concealing 46 gallons of distilled spirits with the intent to defraud the United States of the tax required by law. To the second count of this indictment McGee entered a plea of guilty. Claimant was tried before Judge Campbell without a jury and found not guilty. In reference to claimant's contention that he had no connection either with the cans or the illicit alcohol, the court among other things stated: "His story is plausible. * * * we have here the case

of a rather naive individual who undertook to do a favor for a former fellow employee, without any other connection between them as to the operation of the premises or joint ownership of the alcohol."

In the instant proceeding Judge Barnes found: "The claimant had no knowledge that McGee was engaged in any illegal activities in violation of the Internal Revenue Code." Notwithstanding the government's earnest and in some respects persuasive argument that claimant either knew or should have known that the package containing the cans which were transported in his truck were to be used at the end of the journey in connection with an illegal enterprise, we are unable to say that the finding to the contrary is not supported by substantial evidence. In fact, two Judges who have heard and seen the witnesses evidently were convinced of the truthfulness of the story told by claimant. We must accept this finding.

Judge Barnes also found with reference to count 1 of the libel that there was insufficient proof that the tractor was used by claimant and McGee "in the removal and for the deposit and concealment of utensils or vessels, to-wit: five-gallon tin cans, proper for and intended to be made use of for and in the making of goods and commodities for and in respect whereof a tax is imposed, to-wit, distilled spirits, with intent to defraud the United States of said taxes and any part thereof, in violation of Section 3321(b) (1) (3) * * *." On what theory the court pronounced this so-called finding the record does not disclose. Certainly it can hardly be open to doubt but that McGee procured the cans and caused them to be transported in claimant's truck for the purpose of utilizing them upon arrival at the garage as containers for illegal alcohol. And for the reasons already stated, we must accept as a fact that claimant was an innocent party in the matter, that he had no knowledge as to what was being transported in his truck and no intent or purpose to defraud the United States, as alleged. In other words, he must be regarded as an innocent victim of circumstances. Even so, it is set-tled that a proceeding of this character is against the truck, and if it has offended, the innocence of its owner is no defense. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 513, 41 S.Ct. 189, 65 L.Ed. 376; Busic v. United States, 4 Cir., 149 F.2d 794, 795.

We suppose, however, that the court's determination disclosed in the finding under discussion was predicated upon the theory that the transportation of the cans under the circumstances shown did not come within the reach of the forfeiture provision (Sec. 3321(b) (3) ). In other words, that the truck was not "used in the removal or for the deposit or concealment" of "any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, * * * proper or intended to be made. use of for or in the making of such goods or commodities", that is, alcohol upon which no tax has been paid. A literal application of the statute appears to justify the finding. No tax was required upon the cans and there was no violation in their possession or transportation. And they were not intended to be used and as a matter of fact were not used "in the making" of illegal alcohol. As the proof shows, that process had been completed. In other words, the illegal alcohol had been made prior to the time the cans came in contact or had any connection therewith, and by that time their connection with the truck had been severed.

The government in an attempt to negative this interpretation of the statute relies upon Danovitz v. United States, 281 U.S. 389, 50 S.Ct. 344, 345, 74 L.Ed. 923. There the court was considering a provision of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., which made it "unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this chapter or which has been so used." There it was the cans actually in use in connection with an illegal enterprise which were held subject to forfeiture. Here it is the truck in which the cans were transported at a time when they were not associated with any illegality. True it was argued that empty

containers, bundles and other described apparatus could not be used in or designed for the manufacture of liquor, because the manufacture was completed before that apparatus came into play. And the court in response to this argument stated, 281 U.S. at page 396, 50 S.Ct. at page 345, 74 L.Ed. 923: "It is obviously correct if the word 'manufacture' be taken in the strictest and most exact sense. But the word may be used in a looser way to express the whole process by which an article is made ready for sale on the open market." The court interpreted the word in the "looser way" and stated 281 U.S. page 397, 50 S.Ct. page 345, 74 L.Ed. 923, "that if the empty containers and the other objects seized were offered for sale in such a mode as purposely to attract purchasers who wanted them for the unlawful manufacture, as we interpret the word, they were designed for that manufacture and could be seized." As the court in that case pointed out, "The decisions under the revenue acts have little weight as against legislation under the afflatus of the Eighteenth Amendment." Conversely, we suppose that decisions construing statutes enacted pursuant to the Eighteenth Amendment carry little weight when applied to provisions of the Revenue Act. Moreover, the facts of the Danovitz case were so extremely dissimilar to those here as to render it of little consequence as a precedent. A reading of the opinion of the Court of Appeals in that case, entitled Feitler et al. v. United States, 3 Cir., 34 F.2d 30, emphasizes the distinction. Almost every conceivable kind of property used in connection with a distillery was there seized, including some empty 5-gallon cans. As the Court of Appeals pointed out, 34 F.2d at page 33:

"It is plain that bottles, corks, sealing wire, or great quantities of these articles, do not, standing alone, constitute property designed to be used in the manufacture of liquor. Ordinarily they are lawful articles of commerce not affected by the National Prohibition Act. But when, not standing alone, they are assembled and put on sale with clearly forbidden property they take on a new character and themselves become contraband because intimately associated with unlawful manufacture and inseparably connected with the sale of the unlawfully manufactured product."

So in the instant situation the cans in themselves and while on the truck were lawful property. We do not think it could be logically contended that the cans were subject to forfeiture while they were on the truck. It was only after they were taken into the garage and became associated and connected with the illegal alcohol that they became contraband. At that time no doubt they as well as the alcohol were subject to seizure and forfeiture but, in our view, it does not follow that either the cans or the truck were subject to forfeiture while they were being transported by the latter. And it does not help the government to argue as it does that because McGee pleaded guilty to the criminal indictment, he thereby admitted his "intent to defraud the United States." True, he pleaded guilty to the concealment of 46 gallons of distilled spirits which the evidence conclusively shows that he had in his possession when the government officers arrived, but there is nothing in that plea, by inference or otherwise, which indicates an admission by McGee of an offense by or against the truck. And certainly there is nothing in that plea which in any way affects the right of the claimant or which has any bearing upon the interpretation of the provision upon which forfeiture is sought to be maintained.

The only other case which the government cites in support of the construction which it would have us place upon this forfeiture provision is a per curiam opinion by the Fifth Circuit in Oliver v. United States, 170 F.2d 142. There, it appears that a motor car was used in transporting twenty-three 1-gallon jugs to a distillery which was about to be unlawfully operated and that the jugs were to be used in the enterprise. A forfeiture allowed by the court below was affirmed. The meager facts related in the opinion are hardly sufficient to make a fair comparison with those of the instant situation. In

any event, we are not disposed to follow it.

■ Congress has not by express language provided for the forfeiture of a truck used in the removal of a utensil or vessel to be employed as a container for a finished illegal product and we see no reason why a court should do so by interpretation. Thus, we sustain the court's determination as to the insufficiency of the proof relative to count 1.

As to count 4, the court also determined that the proof was insufficient. This count alleges that at the time and place of the seizure the truck had been used and was intended to be used to violate the Internal Revenue laws, "that is to say, at or about the time of the seizure of the said truck the said parties who had transported five-gallon tin cans therein to the premises, had in their possession and control in a garage at the premises aforesaid untaxpaid distilled spirits in five-gallon tin cans of the same kind as those transported there in the said tractor truck, and in other containers, which said cans and other containers did not have affixed thereto stamps denoting the quantity of distilled spirits contained therein and evidencing payment of all internal revenue taxes imposed on such spirits, all in violation of Sections 3116 and 2803 of the Internal Revenue Code." Any contention that claimant was in the possession and control of any of the articles in question at that time is without merit. The proof shows conclusively that the garage was in the possession and control of McGee. There is no proof and no reason to think that claimant had any interest in, control of or any right to possession of the garage, and the same can be said of the contraband articles. The mere fact that claimant entered the garage at the invitation of McGee, that he did nothing but watch while he was in the garage and that he prepared to leave when he discovered what was in progress, certainly are no evidence of possession on his part.

■ A reading of Sec. 3116, as well as the cases where it has been applied, indicates that the material factor is the intention of the possessor of property, in the instant case the truck. As was stated in United States v. One 1941 Buick Coach Automobile, D.C., 85 F.Supp. 402, 404:

"This statute provides for forfeiture of all property and in all cases where the evidence supports the conclusion that such property is used or intended to be used in violation of the Internal Revenue laws. * * * Of course, there must be some use, or intention on the part of someone having the property under control to use it, in violation of one of the Internal Revenue laws."

■ See also United States v. Windle, 8 Cir., 158 F.2d 196. And that the government so construes this provision is indicated by its lengthy review of the evidence designed to show knowledge on the part of claimant as to the unlawful purpose for which the truck was employed, with the resultant intention on his part to violate the revenue laws. As already noted, we accept the finding that claimant had no knowledge of any illegal purpose to which the cans were to be put, and it would seem to follow that he had no knowledge that the truck was being used for an unlawful purpose. The court specifically found as to both counts that there was no intent on the part of the claimant to defraud the United States of taxes as alleged. It has frequently been held that the issue of intent is one of fact and not of law. Vandevander v. United States, 5 Cir., 172 F.2d 100, 102; One 1941 Oldsmobile Sedan v. United States, 5 Cir., 161 F.2d 348, 353; United States v. One Kissel Touring Automobile, 9 Cir., 296 F. 688, 689.

The order appealed from is affirmed.