STATE OF NEBRASKA, APPELLEE, v. JOHN B. HILPERT, APPELLANT.

330 N.W.2d 736

Filed February 25, 1983. No. 82-206.

Laurice M. Margheim of Bayer & Margheim, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This case was consolidated for trial in the District Court and argued here with *State v. Hilpert,* which appears *ante* p. 564, 330 N.W.2d 279 (1983). That opinion contains a complete recitation of the essential facts, which will not be repeated here. Also, it disposed of all assignments of error raised here, with one exception, i.e., that the District Court erred in finding that the intent to deprive, an essential element of the crime of theft by deception, could be inferred from evidence of breaches of a fiduciary relationship. The trial judge, in his memorandum opinion, did make such a statement. However, the essential inquiry which we must make is whether or not the defendant was guilty, beyond a reasonable doubt, of committing the acts necessary to establish his guilt.

As stated in our previous opinion, the defendant had known as early as April of 1972 that Gretchen Hilpert had been converting to her own use assets of the guardianship estate of which he was the guardian. It was clear that this had been accomplished only because the defendant had, without restriction, given her checks on the account, which he had signed in blank. Nevertheless, he continued this same practice throughout the ensuing years and into 1980. At no time did he ever make any investigation of his own to determine the actual amount of the shortage—he made no examination of the annual reports which he had signed in the past or which he approved in the future; he made no comparisons with the bank statement so as to verify deposits,

withdrawals, and balances; and he made no inquiry to ascertain the use to which Gretchen was putting the blank checks, although he knew from past experience that she had been using them for her own account. He was aware of the fact that after leaving Nebraska for California in 1973, both his and Gretchen's employment was sporadic at best. He testified that he observed the August 7, 1980, draft in the amount of $2,461.35 in their possession which, it develops later, was endorsed by Gretchen to herself and deposited in her account. He admitted that he did not tell her what to do with the draft, did not know that she was going to deposit it in her account, and believed that she would return it to the guardianship account, even though he was fully aware of the fact that she had twice before confessed to misappropriation of guardianship funds. When asked whether, after becoming aware of the initial shortage, he ever thought about contacting the bonding company, he replied, "They would be the last people I would contact."

For the defendant to claim he did not know that by continuing his practices of the past, specifically the handing over to Gretchen of signed blank checks without supervision, she would continue to steal from the guardianship account is simply utterly fantastic and incredible.

In *United States v. Wilson,* 59 F.2d 97, 98 (W.D. Wash. 1932), the court said: "Where a defendant has knowledge that another is promoting a violation of the prohibition law and in need of materials for furthering the enterprise, and such defendant, with such knowledge, furnishes the necessary materials for the purpose of forwarding the unlawful purpose, making it possible to accomplish the unlawful act, he is guilty. . . .

"In the instant case the defendant had, no doubt, knowledge of the sale and the purpose for which used, or at least *such as to put a reasonable person on inquiry.*" (Emphasis supplied). To the same

effect is *Pattis v. United States,* 17 F.2d 562, 566 (9th Cir. 1927), where the court said: "The court clearly instructed the jury that, if defendant had knowledge that Jensen and Clark were in a conspiracy to violate the National Prohibition Act, as charged in the indictment, and that they were purchasing material for that purpose pursuant to such conspiracy, and defendant, with such knowledge, assisted and aided Jensen and Clark by selling and delivering the materials to be used, thus making it possible to carry out the unlawful object of the conspiracy, defendant was a coconspirator. This is a correct statement of the law and supported the verdict upon either or both counts."

The evidence is sufficient to convict a person as an aider and abettor if it shows that the crime was committed by someone and that the defendant incited or instigated, i.e., aided and abetted in, its commission. Such evidence may be circumstantial only, but if the facts which such evidence tends to establish may be accounted for upon no rational theory which does not include the guilt of the accused, it is sufficient to sustain the conviction. *State v. Davis,* 185 Neb. 433, 176 N.W.2d 657 (1970).

The evidence in this case was sufficient to sustain a finding beyond a reasonable doubt that the defendant was guilty as an aider and abettor of the crime of theft by deception.

As to the claim of excessiveness of the sentence, which was for a term of 18 months to 2 years, we believe that our comments in *State v. Hilpert, supra,* are equally applicable here.

The judgment and sentence of the District Court are affirmed.

AFFIRMED.

CLINTON, J., not participating.